260

## UNITED STATES v. FRENCH BAUER, Inc., et al.

### No. 6056.

District Court, S. D. Ohio, W. D.

Sept. 8, 1942.

Thurman Arnold, Asst. Atty. Gen., Calvin Crawford, U. S. Atty., of Dayton, Ohio, Daniel B. Britt and Thos. H. Daly, Sp. Assts. to the Atty. Gen., Richard D. Kearney, of Cincinnati, Ohio, Walker Smith, of Chicago, Ill., and A. Stewart Kerr, Sp. Attys., for plaintiff.

Robert N. Gorman, Nichols, Wood, Marx & Ginter, Frost & Jacobs, Edward J. Tracy, and James H. Cleveland, all of Cincinnati, Ohio, for defendants.

FORD, District Judge.

The indictment charges a price fixing conspiracy in reference to fluid milk and milk products. The indictment shows that approximately 50% of this milk is shipped into the Cincinnati area from other states, Indiana and Kentucky, and that 50% of it is Ohio milk, and when it reaches the handlers in Cincinnati the out-of-state milk is commingled with the state milk and delivered to retailers and consumers, all of whom are within the state.

According to all the authorities with which I am familiar, when a commodity, intended for consumption entirely within the state, reaches the state of its destination and is commingled with the mass of goods within the state, its interstate journey is ended and it then loses its identity as a commodity moving in commerce between the states. The conspiracy charged in this indictment is directed to the fixing of prices upon fluid milk which is not moving or intended to move in interstate commerce. The authorities teach that the Sherman Anti-Trust Act, 15 U.S. C.A. §§ 1–7, 15 note, may reach such a conspiracy, but only if the acts charged are such as directly and substantially affect the commerce in the commodity between the states.

We have had a variety of Congressional Acts in recent years which deal with similar situations. The discussion of them in the Darby case is very interesting. United States v. Darby, 312 U.S. 100, 120, 122, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430, Chief Justice Stone in that opinion points out that under the power granted by the commerce clause of the Constitution, article 1, § 8, cl. 3, Congress may by appropriate legislation regulate intrastate activities. When? Where they

have a substantial effect on interstate commerce. As an example, he refers to the National Labor Relations Act, 29 U.S.C. A. § 151 et seq., and other acts. He points out that Congress has sometimes left it to the courts and in other instances to administrative agencies to determine whether the intrastate activities have the prohibited effect on commerce between the states. As an example of a case where Congress has left this determination to the courts, he points to the Sherman Act. When the Government invokes jurisdiction of the court to determine whether a particular conspiracy or particular acts alleged to constitute a conspiracy are reached by the Sherman Act I think it clear that facts must be alleged, which, if established by proof, would bring the acts complained of within the scope or reach of the Sherman Act. As I read this indictment it does not allege any fact or any act which directly or substantially affected interstate commerce or the avowed intention, purpose or necessary effect of which was the accomplishment of that result. So far as we are informed by this indictment, if there be any effect upon interstate commerce it may be so remote as to be of no real or substantial consequence whatever. Doubtless the omission of an allegation that interstate commerce was directly and substantially affected in this case is due to the fact that the Milk Marketing Orders of the Secretary of Agriculture made pursuant to the Agricultural Marketing Agreement Act of 1937, 7 U.S.C.A. § 601 et seq., were effective in this territory during the period covered by the indictment and protected interstate commerce in fluid milk from what might otherwise have been the effect of a uniform and arbitrary level of retail prices. Be that as it may, the fact remains that there is no allegation of any direct or substantial effect on interstate commerce as the result of the alleged intrastate price-fixing conspiracy. I do not understand the authorities to hold that a mere charge that there was an intrastate combination directed to the fixing of prices in an intrastate market is alone sufficient to bring such a conspiracy within the reach of the Sherman Act.

■ My idea of the law is that in view of the authorities which hold that an intrastate conspiracy is not within the Sherman Act unless it directly and substantially affects interstate commerce, it is necessary in an indictment or in a civil pleading seeking relief under the Sherman Act that not merely conclusions but factual allegations be made which are sufficient to show direct and substantial impact upon interstate commerce.