**UNIVERSAL MILK BOTTLE SERVICE,
Inc. et al. v. UNITED STATES.**

**No. 11180.**

United States Court of Appeals
Sixth Circuit.

April 4, 1951.

Robert N. Gorman, Cincinnati, Ohio, for Universal Milk Bottle Service and others.

Robert S. Marx and John J. Luhrman, Cincinnati, Ohio, for Mathews-Frechtling Dairy Co.

Orville A. Troy, Harry Kasfir, and Kenneth D. Troy, all of Cincinnati, Ohio, for Co-Operative Pure Milk Asso.

Robert G. McIntosh, Cincinnati, Ohio, for Cedar Hill Farms, Inc.

Michael Lacinak, Cincinnati, Ohio, for J. H. Berling's Dairy Products Co.

H. G. Morison, J. Roger Wollenberg, and Robert H. Winn, Washington, D. C. and Ray J. O'Donnell, Frank Richter, Cincinnati, Ohio, on the brief, for appellee.

Before MARTIN, McALLISTER, and MILLER, Circuit Judges.

PER CURIAM.

On September 24, 1948, an indictment was returned against appellants, charging them with a conspiracy to raise, fix, and maintain prices for the sale of milk, in violation of Section 1 of the Sherman Act, 26 Stat. 209, as amended, 15 U.S.C.A. § 1 et seq. The facts alleged in the indictment set forth that the Cincinnati Area, here in question, has a population in excess of 650,000 persons, who annually consume more than 175,000,-000 pounds of milk, for which they pay more than $16,000,000; that more than 40% of the milk sold by distributors in the Cincinnati Area is produced in Kentucky and Indiana, and is transported from those states, in interstate commerce, to the Cincinnati Area; that appellants sell approximately 67% of the total amount of milk from all sources sold in the Cincinnati Area, and that the remaining 33% is sold by 31 other distributors; that 48% of the milk sold by appellants in the Cincinnati Area is produced in Kentucky and Indiana, and shipped from those states into the Cincinnati Area. It was further set forth that milk, by its nature, is perishable; that it can not be stored, but must reach the consumer within a short time after production; that, in anticipation of, and in response to demands of consumers and other purchasers, the distributors for the Cincinnati Area regularly purchase milk produced in Kentucky, Indiana, and Ohio, and that milk so purchased in Kentucky and Indiana is intermingled with milk purchased in Ohio, and is almost immediately distributed and sold to consumers and other purchasers in the Cincinnati Area; that there is, from day to day, a continuous flow of milk in interstate commerce from producers in Kentucky and Indiana to consumers and other purchasers in Ohio. The indictment then sets forth that beginning on or about July 1, 1946, and continuously thereafter up to and including June 1, 1948, the appellants engaged in a combination and conspiracy to raise, fix, and maintain prices for the sale, in the Cincinnati Area, of milk produced in Kentucky, Indiana, and Ohio, in violation of Section 1 of the Sherman Act; that the conspiracy involved agreement upon prices at which appellants sold milk in the Cincinnati Area and the use of various devices to assure uniformity in the milk prices charged by distributors selling in this Area; that increases in prices charged by distributors in the Cincinnati Area for milk sold to consumers and other purchasers have had the effect of reducing the volume of milk purchased by them, thus reducing the quantity of milk purchased by the distributors from producers in Kentucky, Indiana, and Ohio; and that the acts of appellants in furtherance of the conspiracy were intended to and did raise, fix, and maintain the prices of milk shipped into the Cincinnati Area from outside the State of Ohio and sold in that Area, and thereby restrained interstate commerce in milk.

Appellants moved to dismiss the indictment on the ground that it failed to state an offense under the Sherman Act, and, in support of their motions, appended thereto a milk marketing order and amendments issued pursuant to the Agricultural Marketing Agreement Act of 1937, as amended, 7 U.S.C.A. § 671 et seq., the official bulletin of the Milk Market Administrator for January-February, 1949, showing official statistics, and affidavits containing the regulations of the Board of Health of the City of Cincinnati and operations thereunder, all of which appellants claim "nullified" the allegations of the indictment stating the offense under the Sherman Act.

Thereafter, the district court overruled the motions to dismiss the indictment, stating, in its decision, that "Under the familiar rule the facts as alleged are admitted, on the pending motions, to be true, for the purposes of this decision." [85 F.Supp. 625.] Subsequently, appellants withdrew their pleas of not guilty theretofore entered, and pleaded *nolo contendere;* and following entry of judgments of conviction by the district court, they appealed on the ground that the district court erred in not granting their motions to dismiss the indictment. It is agreed that when a demurrer or motion to quash has been filed and overruled, followed by a plea of *nolo contendere,* the same questions raised on the demurrer or

motion to quash could be presented on appeal. See Hocking Valley R. R. Co. v. United States, 6 Cir., 210 F. 735. Under the Federal Rules of Criminal Procedure, defenses and objections which theretofore could have been raised by demurrers and motions to quash are now raised by motions to dismiss. Rule 12(a).

Appellants contend that the documents which they filed in support of their motions to dismiss the indictment should have been accepted by the district court as disproving the allegations of the indictment and as proof that the indictment failed to state an offense under the Sherman Act. In support of their contention, they rely upon Rule 12 of the Federal Rules of Criminal Procedure, claiming that the district court was bound to consider the above mentioned documents and affidavits as proof of the fact that appellants did not violate the Sherman Act, and consequently erred in failing to hold that the milk marketing order, in effect during the entire indictment period, nullified the allegations of the indictment.

The objection that the indictment fails to charge an offense may be raised before trial by motion to dismiss. Rule 12(b)(2). See Notes to Subdivisions (b) (1) and (2), of Advisory Committee on Rules, 18 U.S.C.A. Federal Rules of Criminal Procedure, pages 205, 206. Appellants contend that the district court should have dismissed the indictment on their motions on the ground that it did not charge an offense because the milk marketing order, copy of which was included in, and made a part of the motions, showed that all prices paid for milk by appellants were established by the Secretary of Agriculture and that all milk produced by producers in Ohio, Indiana, and Kentucky for the Cincinnati Area must be purchased under such order, "so that the statement made in paragraph 24," of the indictment, charging the offense, "is false and untrue." This is not an attack on the indictment based on the objection that it failed to state an offense. It is, rather, an answer to the allegations of the indictment claiming that those allegations are false and untrue. These are issues of fact. In a criminal case, such issues are to be tried by a jury, unless waived. See United States v. Greater Kansas City Retail Coal Merchants' Ass'n, D.C.Mo., 85 F.Supp. 503, 511; United States v. Mertine, D.C.N.J., 64 F.Supp. 792, 794.

Rule 12(b)(1) permits the raising by motion of defenses or objections only where they are "capable of determination without the trial of the general issue," the general issue being the issue presented by the allegations of the indictment and the plea. Allegations of the indictment essential to prove the offense charged and the pleas in answer to such allegations require a trial of the general issue. Here, the issue presented by the defense or objections raised by appellants in their motions is that the allegations of the indictment are false and untrue. This is the general issue, and this issue could only be determined on the trial. Appellants, therefore, under Rule 12, can not present such a defense or raise such an objection by a motion to dismiss the indictment. Although appellants moved to dismiss the indictment on the stated ground that it did not charge an offense under the Sherman Act, they based their claims on documents attached to the motions, which, it was contended, proved that the allegations in the indictment were false and untrue. If appellants had moved to dismiss the indictment on the ground that the allegations in the indictment were false, it must be conceded that the district court could not have determined the truth or falsity of the allegations of the indictment on such motions, and would properly have dismissed them. But that is, in reality, what appellants did in this case by moving to dismiss on the alleged ground that the indictment did not state an offense, and then offering, in support of their motion, documentary evidence, not that the indictment did not state an offense, but that the allegations of the indictment were false. This was not permitted under the former practice, and is not permitted under Rule 12.

The district court, in dismissing the motions, explicitly ruled that the allegations of the indictment, for the purposes of the

determination of the motions, were admitted to be true. As presenting issues of fact, the contentions set forth in the motions could have been availed of in pleas as defenses to the charges in the indictment. But appellants, instead of going to trial on pleas of not guilty, pleaded *nolo contendere*. The district court was not required, on the motions, to determine factual issues raised by appellants as to the truth or falsity of the allegations of the indictment, and was not in error in holding that the indictment stated an offense under the Sherman Act and in denying appellants' motions to dismiss the indictment.

Appellants contend that failure to allege in the indictment that the acts claimed to have been done by the corporate appellants were authorized or performed by officers or agents of the corporations, deprived the indictment of the necessary allegation of intent. It is not necessary to allege intent in a charge of violation of the Sherman Act. United States v. Griffith, 334 U.S. 100, 105, 106, 68 S.Ct. 941, 92 L.Ed. 1236; United States v. Masonite Corp., 316 U.S. 265, 275, 62 S.Ct. 1070, 86 L.Ed. 1461. As a matter of fact, intent was here alleged—that "The acts to be performed, * * * pursuant to and in furtherance of the conspiracy herein alleged, were intended to and do raise, fix and maintain the prices of milk shipped into the Cincinnati area * * * and thereby unreasonably restrain trade and commerce among the several states." In this case, the corporations admitted the allegations of the indictment by pleading *nolo contendere*. It is not required that the indictment must contain an allegation that an act done by a corporation was authorized by its officers and agents.

Appellants' contention that the indictment did not state an offense against the laws of the United States in that the indictment charges purely an intrastate conspiracy was fully discussed and rejected by the District Judge in an opinion which pointed out how the indictment in this case differed from the indictment in United States v. French-Bauer, Inc., D.C., 48 F.Supp., 260, which is strongly relied on by appellants. We agree with that ruling and the reasons given in support of it. See United States v. Universal Milk Bottle Service, D.C., 85 F.Supp. 622.

Appellants contend, however, that the intermingling of milk which moved in interstate commerce into the Cincinnati area with other milk after it reached that area, and the processing of such milk after it reached that area, before its distribution to the consumer in that area, caused such milk to lose its interstate character, and that these questions were not considered by the District Judge. We believe that the first of these contentions is answered by Peoples Natural Gas Co. v. Public Service Commission, 270 U.S. 550, 46 S.Ct. 371, 70 L.Ed. 726, and that the second of these contentions is answered by Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328, and Swift & Co. v. United States, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518. In any event, such contentions are of the same character, and are met by the same answer, as is the additional contention of the appellants discussed in the second paragraph following hereafter.

Appellants contend that the interstate transportation of the milk is terminated by its temporary storage in Cincinnati, while being processed and held for later retail distribution. Reliance is placed upon Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460, and Higgins v. Carr Bros. Co., 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. 468, and the approval given to the rulings in those cases in Standard Oil Co. v. Federal Trade Commission, 340 U.S. 231, footnote 6 at page 238, 71 S.Ct. 240. Those cases deal with the "stream of commerce" doctrine, and, as shown by the Standard Oil Co. case, whether temporary storage of a product moving in interstate commerce terminates its interstate character depends upon the particular facts under which storage is effected. In the Jacksonville Paper Co. case, it was recognized that a course of business based on anticipation of needs of specific customers, rather than on prior orders, might at times be sufficient to

establish practical continuity in traffic so as to constitute movement of goods in commerce irrespective of temporary storage. The evidence in that case was held insufficient to establish such continuity. In the Standard Oil Co. case, it was held sufficient. The present case, in our opinion, presents a stronger factual situation than existed in the Standard Oil Co. case. Pevely Dairy Co. v. United States, 8 Cir., 178 F.2d 363. United States v. Sheffield Farms Co., D.C.N.Y., 43 F.Supp. 1, 5. See also United States v. Capital Transit Co., 338 U.S. 286, 70 S.Ct. 115, 94 L.Ed. 93.

It is not necessary in this case to establish the "stream of commerce" doctrine. As pointed out by the District Judge, the case can be bottomed on the substantial economic effect on interstate commerce of an act wholly intrastate. United States v. Women's Sportswear, 336 U.S. 460, 69 S.Ct. 714, 93 L.Ed. 805. In such cases the point where interstate commerce ceases is not involved, if in fact interstate commerce is substantially affected. Local 167, I. B. T. v. United States, 291 U.S. 293, 297, 54 S.Ct. 396, 78 L.Ed. 804; Lake Valley Farm Products v. Milk Wagon Drivers Union, 7 Cir., 108 F.2d 436, 440; reversed on other grounds, 311 U.S. 91, 61 S.Ct. 122, 85 L.Ed. 63; United States v. Sheffield Farms, supra. In the present case, the interstate transportation of milk into Ohio was affected, even though the transportation in interstate commerce ended upon its arrival in Cincinnati.

The judgment is affirmed.