**MELROSE DISTILLERS, INC., C V A Corporation, and Dant Distillery and Distributing Corporation, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 7608.**

United States Court of Appeals Fourth Circuit.

Argued June 4, 1958.

Decided Aug. 29, 1958.

Certiorari Granted Nov. 10, 1958.

See 79 S.Ct. 125.

Robert S. Marx, Cincinnati, Ohio (Roy G. Holmes, Cincinnati, Ohio, Hilary W. Gans, Markell, Veazey & Gans, Balti-

more, Md., and Nichols, Wood, Marx & Ginter, Cincinnati, Ohio, on brief), for appellants.

Wilford L. Whitley, Jr., Attorney, Department of Justice, Alexandria, Va. (Victor R. Hansen, Asst. Atty. Gen., George H. Schueller, Attorney, Department of Justice, Washington, D. C., and Leon H. A. Pierson, U. S. Atty., Norfolk, Va., on brief), for appellee.

Before SOPER and HAYNSWORTH, Circuit Judges, and MOORE, District Judge.

MOORE, District Judge.

Appellants Melrose Distillers, Inc., and C V A Corporation are dissolved Maryland corporations. Appellant Dant Distillery and Distributing Corporation is a dissolved Delaware corporation. They were convicted along with numerous other defendants not involved here on their plea of nolo contendere to a three count indictment charging conspiracy to fix wholesale and retail prices of alcoholic beverages shipped into the State of Maryland by outside manufacturers, and to monopolize and attempt to monopolize interstate trade and commerce therein in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2. The indictment was returned on April 6, 1955. The corporations were all dissolved on May 2, 1955. The plea of nolo contendere was filed on January 6, 1958. Prior to their pleas of nolo contendere, appellants had pleaded not guilty and had moved to dismiss the indictment on the grounds, so far as pertinent here, (1) that each of them had been dissolved prior to the plea of nolo contendere, and (2) that the alleged acts and conduct of defendants charged in the indictment "were permitted, sanctioned, and encouraged" by the announced governmental policy and law of the State of Maryland.

The questions involved in appellants' motions in the District Court to dismiss the indictment survive the plea of nolo contendere. Universal Milk Bottle Service v. United States, 6 Cir., 188 F.2d 959. Hence, appellants would be entitled to a reversal of their conviction notwithstanding the plea of nolo contendere should their contentions regarding the indictment be sustained on this appeal.

The law of Delaware providing for the survival for certain purposes of dissolved corporations (Section 278 of the General Corporation Law of the State of Delaware; 8 Del.C. § 278) reads as follows:

"All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of three years from such expiration or dissolution, bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, and to divide their capital stock, but not for the purpose of continuing the business for which the corporation shall have been established. With respect to any action, suit, or proceeding begun or commenced by or against the corporation prior to the expiration or dissolution and with respect to any action, suit or proceeding begun or commenced by or against the corporation within three years after the date of the expiration or dissolution, the corporation shall, only for the purpose of such actions, suits or proceedings so begun or commenced, be continued bodies corporate beyond the three-year period and until any judgments, orders, or decrees therein shall be fully executed."

Corresponding provisions of the law of Maryland are:

"The dissolution of the corporation shall be effective when the articles of dissolution have been accepted for record by the Commission, provided, however, that the corporation shall continue in existence for the purpose of paying, satisfying and discharging any existing debts and obligations, collecting and distributing its assets,

and doing all other acts required to liquidate and wind up its business and affairs." Section 72(b), Article 23 of the Annotated Code of Maryland (1951) [now Section 76 (b)] and

"The dissolution of a corporation shall not relieve its stockholders, directors or officers from any obligations and liability imposed on them by law; nor shall such dissolution abate any pending suit or proceeding by or against the corporation, and all such suits may be continued with such substitution of parties, if any, as the court directs. \* \* \*" Section 78(a) iden.

■ Appellants argue that both the Delaware and the Maryland statutes should be interpreted to mean that a dissolved corporation survives its dissolution only for the purpose of winding up its civil affairs and discharging its civil obligations; but that no criminal charges which have not been disposed of by imposition of a fine or penalty survive the dissolution of the corporations. Stated more clearly, the argument is that insofar as pending criminal proceedings are concerned, the dissolution of a corporation is equivalent to the death of a natural person and that unless the legislature of the state of the corporation's birth shall have specifically provided otherwise (as they contend neither Delaware nor Maryland has done) a pending criminal proceeding can go no farther. We think this contention is based upon a strained and artificial interpretation of the statutory language. There may be situations in which a precise and restrictive meaning should be given to the words "action, suit or proceeding" as used in the Delaware statute and the words "suit or proceeding" as used in the Maryland statute. However, the application of these words where the question involves the abatement or survival of criminal prosecutions pending against corporations does not present such a situation. To give them the construction for which appellants contend would offend our sense of justice, pervert the obvious policy of the state in enacting these survival statutes, and provide an easy avenue of escape by corporations from the consequences of their criminal acts by the simple process of voluntary dissolution.

That there is a division of authority on this question can not be denied. The Tenth Circuit in the case of United States v. Safeway Stores, Inc., 10 Cir., 140 F.2d 834, in considering the same Delaware statute involved here, concluded that the word "suits" does not include a criminal prosecution. It is to be noted, however, that the Court in that case did not even consider, much less interpret, the broader term "proceedings," appearing in the same statute. Moreover, the corporations involved there had been dissolved prior to indictment, and therefore there was no "pending" proceeding.

In the later case of United States v. United States Vanadium Corporation, 10 Cir., 230 F.2d 646, 648, decided by a different panel of judges of the Tenth Circuit, that Court, while adhering to the doctrine of the Safeway case, said that the panel of judges who decided the Vanadium case were not "in full sympathy with the law as declared in the Safeway case," and strongly intimated that were it not for their feeling "that one panel of the court should not lightly overrule a decision by another panel" they would have arrived at a different conclusion.

In United States v. Line Material Company, 6 Cir., 202 F.2d 929, 931, the Court of Appeals for the Sixth Circuit, construing this same Delaware statute, held that the words "action, suit or proceeding" did not embrace a criminal prosecution.

On the other hand, the Court of Appeals for the Seventh Circuit, in the case of United States v. P. F. Collier & Son Corporation, 7 Cir., 208 F.2d 936, 940, 40 A.L.R.2d 1389, reached exactly the opposite conclusion. The reasoning of that Court was as follows:

"We have read and reread defendants' argument, as well as the many

cases cited in support of the order appealed from, but we are unable to escape what we think is the plain, unambiguous terminology contained in the Delaware statute. The words 'any action, suit, or proceeding' in their ordinary and generally accepted meaning and use embrace, so we think, all forms of litigation, civil, criminal, bankruptcy and admiralty. The words carry such a plain meaning that they are hardly open to construction, and their employment leaves no room to speculate on the legislative intent. If, however, the legislature had intended to embrace only civil litigation, it could easily have done so by the addition of a single word, 'civil,' and could have provided for 'any civil action, suit or proceeding.' Or if it had intended to exclude a criminal prosecution from the broad and inclusive language which it employed, it could readily have done so by providing, 'any action, suit or proceeding other than a criminal prosecution.' And while it may be an immaterial observation, no sound reason occurs why a legislature would intend to relieve a dissolved corporation of its criminal liability and at the same time preserve its civil liability. A corporation cannot be sent to jail; the discharge of its liability whether criminal or civil can only be effected by the payment of money."

In our view the Collier case correctly interprets and applies the words of the Delaware statute. We have held in a tax case, construing the very Delaware statute involved here that "[T]he word 'proceeding' is obviously broader than action or suit and should be given full effect in order to achieve the fundamental purpose of the statute." Bahen & Wright, Inc., v. Commissioner of Internal Revenue, 4 Cir., 176 F.2d 538, 539. See also United States v. Maryland & Virginia Milk Producers, Inc., D.C. D.C., 145 F.Supp. 374.

We find the Maryland statute to be, in all its essentials, of like effect to that of Delaware. We conclude therefore that under the applicable statutes, both of Delaware and Maryland, the dissolution of appellant corporations did not extinguish their liability in pending criminal proceedings against them.

Appellants' motion in the District Court to dismiss Counts 1 and 2 of the indictment on the ground that the alleged acts and conduct of defendants charged therein "were permitted, sanctioned, and encouraged" by the announced governmental policy and law of the State of Maryland was without merit, and was properly overruled.

Two Maryland Statutes were cited in support of this motion. One was the Maryland Alcoholic Beverages Law, Code 1951, art. 2B, § 1 et seq.; the other the Maryland Fair Trade Law, Code 1951, art. 83, § 102 et seq. The pertinent portions of the Alcoholic Beverages Law merely provide against discrimination by manufacturers and wholesalers in price, discounts, or quality of merchandise between one customer and another; and further that the Comptroller of the Treasury shall prescribe maximum discounts and require manufacturers and wholesalers to file a schedule of their prices to their customers, and to file with the Comptroller any proposed price change, which change, if a reduction in price, is to be postponed for a period of time prescribed by the Comptroller sufficient to permit notice to other manufacturers or wholesalers selling similar wines or liquors and an opportunity for them to make a like price decrease. Obviously, this system of regulation preserves free and open competition among retailers, and could not by any stretch of the imagination be denominated "horizontal" price fixing.

The Fair Trade Law of Maryland, as do most such State Fair Trade Laws, merely permits manufacturers and wholesalers of trade-marked goods which are in free and open competition with other goods of the same class to fix the retail price of these goods for the purpose of protecting the trade mark. Neither the Maryland Fair Trade Law

nor the Maryland Alcoholic Beverages Law affords protection against prosecution for a conspiracy to fix prices "horizontally" or a conspiracy to monopolize trade or an attempt to do so.

The indictment in count one charged a conspiracy to bring about "horizontal" price fixing; in count two it charged a conspiracy to monopolize interstate trade and commerce in alcoholic beverages, and in count three it charged an attempt to monopolize such trade and commerce. None of these acts is in any way permitted, sanctioned, or encouraged by the announced governmental policy and law of the State of Maryland.

It follows from what has been said that the judgment of the District Court is

Affirmed.