The **BOND DISTRIBUTING CO.**, a Maryland corporation,

and

Edward Borow, a citizen and resident of Maryland

v.

**CARLING BREWING COMPANY**, Incorporated, a Virginia corporation.

Civ. No. 11711.

United States District Court
D. Maryland.
April 25, 1963.

Philip Dorfman, Philadelphia, Pa., and Paul R. Kach, Baltimore, Md., for plaintiffs.

William L. Marbury, Frederic S. Cross and John Martin Jones, Jr., Baltimore, Md. (William B. Norris, Cleveland, Ohio, of counsel), for defendant.

THOMSEN, Chief Judge.

Plaintiff Bond Distributing Company (Bond) was the Baltimore distributor for defendant Carling Brewing Company (Carling) from July 1952 until January 1959, when Carling terminated a written agreement between them which had been executed in 1956. Plaintiff Borow is the president and principal stockholder of Bond. Plaintiffs have filed a complaint against Carling alleging five causes of action: (1) for breach of contract, claiming damages for lost profits anticipated by Bond; (2) for breach of contract, claiming damages for money spent and invested by Bond in reliance on an alleged promise by Carling with respect to the continuance of the distributorship; (3) for breach of contract, claiming expenses and investment losses incurred by Bond in the distributorship and anticipated profits based upon an alleged custom in the brewing industry not to terminate a long-standing distributorship except for good cause; (4) for violations of the antitrust laws, set out more fully below; and (5) for defamation, claiming damages for injuries alleged to have been suffered by Borow.

The case is now before the Court on Carling's motion under Rule 56, F.R.Civ. P., for summary judgment in its favor on Count 4, the antitrust count, and plaintiffs' motion for further discovery with respect to that count. No motions are pending with respect to the other counts.

The claim set out in Count 4 of the Amended Complaint contains three elements, namely:

First, that Carling conspired to dominate, or attempted to monopolize, the brewing industry in the United States;

Second, that as a part of, or in furtherance of, that conspiracy or attempt, Carling embarked on a plan or program designed to eliminate its independent distributors; and

Third, that Bond's distributorship was terminated pursuant to that plan or program.

Plaintiffs requested discovery of many documents. Almost all of those documents were supplied by Carling in connection with the answers to interrogatories. Since the filing of those answers and documents, plaintiffs have not requested discovery of any additional documents. At plaintiffs' request Carling has admitted the authenticity of many of the documents.

Plaintiffs served numerous interrogatories, addressed to E. P. Taylor, Chairman of the Board of Carling and Chairman of the Board of Canadian Breweries, Ltd. (CBL), which now owns over 99% of the stock of Carling and for many years has owned a majority of its stock. Those interrogatories were originally answered by Ian P. Dowie, President of Carling and President of CBL. However, after a hearing on plaintiffs' motion

to have Taylor answer the interrogatories, they were answered by Taylor and no exceptions to the sufficiency of his answers have been filed. The answers include an historical sketch of the relationship of Carling to CBL and the development of Carling's business throughout the United States.

Plaintiffs have taken the depositions of a number of witnesses, including E. S. Scheideman, Carling's Divisional Sales Manager for the division which includes Maryland.

Several hearings have been held in connection with discovery; there have been two pretrial conferences, and two hearings on defendant's motion for summary judgment. At one of the hearings on discovery and at the first hearing on the motion for summary judgment, plaintiffs contended that they needed further discovery and on each occasion were allowed such time as they requested for additional discovery.

The Court placed only two limitations on plaintiffs' discovery.

(a) The Court placed no limitation on plaintiffs' discovery with respect to the second and third elements of their claim, set out above, except that plaintiffs could not take the deposition of Taylor or Dowie, who had answered elaborate interrogatories with respect to those elements, until after plaintiffs had taken the depositions of Scheideman and other employees and officials of Carling and could show some ground for believing that the answers of Taylor and Dowie to the interrogatories were untrue. Plaintiffs thereafter took the depositions of Scheideman and of C. A. Gibney, Jr., the distributor who succeeded Bond, but did not within the time specified renew their request to take the deposition of Taylor

and Dowie in connection with the second and third elements of the claim. Nor have plaintiffs shown any ground for believing that the answers of Taylor or Dowie to the interrogatories were untrue.

(b) In connection with the first element of the claim, counsel for plaintiffs sought to take the deposition of Taylor "with respect to plans and operations of Canadian Breweries, Ltd., whether in Canada, the United States or elsewhere, that relate to or tend to establish a pattern of corporate activities and intentions in Canada, the United States or elsewhere that in the United States would, or might, constitute and be a violation of the Federal Anti-Trust Acts." The Court has denied that request for the reasons set out below.

The documents which Carling supplied to plaintiffs included the report of an investigating committee in Canada which led to an indictment against CBL for violating the Canadian Combines Act, and the entire transcript (including all exhibits) of the prolonged trial thereon in a Canadian Court, at the end of which CBL was acquitted of violating the Canadian Antitrust Laws.[1] The activities of CBL in Canada over the last thirty years, which are discussed at great length in the documents above referred to, followed the repeal of prohibition in the United States and the impact of that repeal on the brewing industry in Canada. Plaintiffs have produced no affidavits or other evidence of any comparable activities by Carling or CBL in the United States. The documents, the answers to interrogatories and the depositions in the case at bar show merely that within the last ten years Carling has expanded its business in the United States to be-

---

1. Whether the activities engaged in by CBL in Canada with the approval of the several provinces would, if done in the United States, violate our antitrust laws, is debatable. See *United States v. Maryland State Licensed Beverage Association*, D.Md., 138 F.Supp. 685, 692–703,

and cases cited therein. For appellate decisions on points decided in that opinion, not material here, see 4 Cir., 240 F. 2d 420; *Melrose Distillers v. United States*, 4 Cir., 258 F.2d 726, aff'd 359 U.S. 271, 79 S.Ct. 763, 3 L.Ed.2d 800.

come one of the large "national" brewing companies as distinguished from "local" brewing companies.[2]

■ To require Taylor to prepare for questioning on any point counsel for plaintiffs might choose out of the forty year history of CBL "in Canada, the United States or elsewhere" would require an enormous amount of work for Taylor and for others in the CBL organization. This Court concluded that it should not place such a burden on them in the absence of some showing by plaintiffs, by way of documents, depositions, affidavits, or answers to interrogatories, that plaintiffs have some evidence tending to prove the other two (the second and third) essential elements of the cause of action asserted in Count 4.[3] However, the Court granted leave to plaintiffs to take additional depositions and to file affidavits to show some support for the second and third elements of their claim, and to present a further statement of the facts and law upon which they rely.

Plaintiffs thereupon took the deposition of Scheideman, Carling's Divisional Sales Manager, and of C. A. Gibney, Jr., the distributor who succeeded Bond, and have filed an additional brief on the facts and law. The new material filed by plaintiffs still does not include any evidence which supports the second and third elements of their claim under Count 4.

With respect to the second element of the claim, after having stated to the Court, at hearing after hearing over the years, that they would produce evidence from former distributors in the Ohio-Pennsylvania area that Carling had embarked on a plan or program designed to eliminate its independent distributors as part of a conspiracy to dominate or an attempt to monopolize the brewing industry in the United States, counsel for plaintiffs have failed to submit a single deposition, affidavit or document tending to prove that Carling embarked on a plan or program to eliminate its independent distributors either as part of such a conspiracy or otherwise. On the other hand, Carling has filed affidavits stating clearly that it has no policy, plan or program to eliminate independent distributors; that the number of such distributors increased from 305 in 1950 to 685 in 1960; that only seven brewery branches have been set up, and those only because no suitable distributor could be found in the area; and that its profitable brewery branch in Boston was closed when a suitable distributor was obtained.

With respect to the third element, defendant's affidavits state flatly that plaintiffs' distributorship was terminated because Carling's sales management executive committee did not believe that Bond was a satisfactory distributor, and was not terminated because of any plan or program to eliminate independent distributors; that Bond was replaced by another distributor who promised to provide additional facilities, but, after various disputes, failed to provide the capital Carling felt was necessary and was in turn replaced by a distributor financed in large measure by Carling. Plaintiffs have not referred the Court to any evi-

2. It is not the largest, but its share of the market may run about 5%. Plaintiffs' contentions with respect to Carling's operations are discussed below in the paragraph designated (A).

3. That conclusion is supported by the following cases which hold that where a plaintiff is unable to show injury to himself as a result of the alleged violations, the court should grant summary judgment for the defendant without inquiring whether there is sufficient evidence to raise a genuine issue on the question of conspiracy or attempt to monopolize. Peller v. International Boxing Club, 7 Cir., 227 F. 2d 593; Clark Oil Co. v. Phillips Petroleum Co., 8 Cir., 148 F.2d 580, cert. den. 326 U.S. 734, 66 S.Ct. 42, 90 L.Ed. 437; Beegle v. Thomson, 7 Cir., 138 F.2d 875, cert. den. Beegle v. Thompson, 322 U.S. 743, 64 S.Ct. 1143, 88 L.Ed. 1576; Riss & Company v. Association of American Railroads, D.D.C., 190 F.Supp. 10. See also United States v. Krasnov, E.D.Pa., 143 F.Supp. 184, aff'd 355 U.S. 5, 78 S. Ct. 34, 2 L.Ed.2d 21.

dence to the contrary in any affidavit, deposition or other document.

Having failed to produce any support for the second and third elements of their stated claim, plaintiffs now take the position that the second element of that claim is not an essential element. Tacitly admitting that Bond's distributorship was not terminated pursuant to a plan or program to eliminate distributors, plaintiffs now contend that Bond's distributorship was terminated directly in furtherance of or as part of a conspiracy to dominate or an attempt by Carling to monopolize the brewing industry in the United States.

However, plaintiffs have not pointed to any evidence tending to prove either (A) that Carling conspired with CBL or anyone else to dominate the brewing industry in the United States, or attempted to monopolize that industry, or (B) that plaintiffs' distributorship was terminated as a result of such a conspiracy or attempt.

(A) Plaintiffs have offered no deposition, document, or affidavit tending to prove that Carling has conspired to dominate or has attempted to monopolize the brewing industry in the United States. Plaintiffs refer to a statement made by Taylor to persons interested in CBL that Carling would market beer nationally in the United States and would attempt to become a major factor in the national market, and have pointed to evidence tending to prove that Carling is seeking to increase the volume of its business and its share of the national market. But such evidence does not show a violation of the antitrust laws, which seek to promote competition, and welcome a newcomer into the field. Plaintiffs claim that Carling has established breweries in strategic locations throughout the country, in order to avoid rail shipping costs.[4] Other breweries have plants throughout the country, and it is the purpose of the antitrust laws to encourage competition which gives the public the benefit of reduced costs.[5] Plaintiffs point to the fact that the Liquor Commission of New Hampshire suspended Carling from doing business in that State because it found that Carling had canceled a particular distributor for refusing to sell Carling's beer exclusively, and that the suspension was affirmed by the New Hampshire courts. Although such action may be a violation of State law or regulation, and may sometimes be taken in an effort to dominate the business in a particular area, such an isolated instance is no evidence of a conspiracy to dominate or an attempt to monopolize the brewing industry in the United States. Plaintiffs also claim that Carling has engaged in price wars, particularly in the Pittsburgh area, but has produced no evidence in support of that claim. Moreover, price cutting, as distinguished from price discrimination, is a competitive practice not prohibited by the antitrust laws in the absence of special circumstances not shown here. Cf. F. T. C. v. Anheuser-Busch, Inc., 363 U.S. 536, 80 S.Ct. 1267, 4 L.Ed.2d 1385. Indeed, maintenance of the same prices by all breweries has been considered evidence of a conspiracy to monopolize. Plaintiffs assert that Carling utilized funds, advanced by CBL, which were "derived from monopoly and near monopoly profits earned by CBL in the Dominion of Canada". Even if CBL did have a monopoly or near monopoly in Canada, plaintiffs have cited no case, and the Court has found none, which holds that the use of funds derived from a foreign

---

4. Of the several hundred operating brewing plants in the United States, Carling, over a period of sixteen years, purchased six. Of those purchased, three are still being operated by Carling, and three were closed because inefficient and replaced by new plants.

5. Indeed the inclusion of phantom freight may be evidence of price discrimination. See Federal Trade Commission v. Cement Institute, 333 U.S. 683, 724 et seq., 68 S. Ct. 793, 92 L.Ed. 1010.

monopoly is of itself a violation of the antitrust laws of the United States. Finally, plaintiffs complain that Carling has advertised on a national basis, and used in the Baltimore area funds obtained from other areas which were more profitable. If this were a violation of the antitrust laws, practically no company which advertises nationally could avoid violation; but it is not a violation of the law for a company to attempt to increase its sales in an area where its volume has been low; and it is hard to see how plaintiffs can complain of additional advertising in their district paid for by profits earned elsewhere. The Court concludes that plaintiffs' several contentions, considered separately or together, do not amount to any evidence that Carling has conspired to dominate or has attempted to monopolize the brewing industry in the United States.

(B) Nor have plaintiffs been able to point to any fact tending to prove that Bond's distributorship was terminated as the result of any conspiracy or attempt to monopolize. As noted above, Carling has filed in support of its motion for summary judgment, affidavits which show that Bond's distributorship was terminated because Carling was not satisfied with Bond's performance,[6] and plaintiffs have offered nothing to contradict that evidence except the bare allegations in

Count 4 of their complaint. That is not enough.[7]

From the evidence adduced by plaintiffs to date, it may well be that they will be able to prove that they were promised various things by Carling which Carling did not perform. If so, they may recover under one or more of the first three counts of their amended complaint.

■ Plaintiffs have renewed their request that they be allowed to take the deposition of Taylor and be permitted to "include in their examination all activities of said E. P. Taylor with respect to plans and operations of Canadian Breweries, Ltd., whether in Canada, the United States or elsewhere, that relate to or tend to establish a pattern of corporate activities and intentions in Canada, the United States or elsewhere that in the United States would, or might, constitute and be a violation of the Federal Anti-Trust Acts." Plaintiffs have utterly failed to support their original claim by any document, deposition or affidavit. Their belated effort to rely on a broader claim would not justify the Court in permitting the proposed fishing expedition in view of the fact that, although plaintiffs have already had the benefit of (1) the entire record in the Canadian case, (2) other documents, and (3) depositions, as well as (4) full answers by Taylor and Dowie to interrogatories, they

6. Plaintiffs and defendants agree the Baltimore market is a very difficult market to break into significantly, since 60% of the market is now held by National Brewing Company, which has its headquarters in Baltimore, the gateway to the "land of pleasant living". Carling opened a brewery in Baltimore in 1961, and a bitter fight is on. The contest was heralded for the better part of a decade, and plaintiffs should have realized that they were not embarking on a sinecure.

7. Berry v. Atlantic Coast Line R. R. Co., 4 Cir., 273 F.2d 572, cert. den. 362 U.S. 976, 80 S.Ct. 1060, 4 L.Ed.2d 1011, especially cases cited at 273 F.2d at 582; Williams v. Baltimore & Ohio Railroad Company, 6 Cir., 303 F.2d 323; Cunningham v. Securities Investment Co. of St. Louis, 5 Cir., 278 F.2d 600; Algar v. Yellow Cab Co., 103 U.S.App.D.C. 129, 255 F.2d 538; Shotwell v. United States, E.D.Wash., 163 F.Supp. 907; Fontenot v. Stanolind Oil & Gas Co., W.D.La., 144 F.Supp. 818, aff'd, 5 Cir., 243 F.2d 574; 6 Moore's Federal Practice 2069, 2d ed., and 1962 Cum.Supp.; 3 Barron & Holtzoff, Federal Practice & Procedure, § 1235.1, and cases cited in 1962 pocket part.

The Third Circuit alone has held the contrary, and the Third Circuit doctrine is being corrected by the amendment to Rule 56(e) adopted by the Supreme Court on January 21, 1963. See also Advisory Committee's note to new Rule 56(e), 31 F.R.D. 648.

are unable to point to any evidence tending to prove a conspiracy or an attempt to dominate or to monopolize the United States market.

■ Where there is no genuine issue as to any material fact, it is the duty of the Court to grant a motion for summary judgment in order to save the time and expense which would be required for the preparation and trial of the issues covered by the motion. Rule 56, F.R.Civ.P. As Chief Judge Sobeloff said in Zoby v. American Fidelity Company, 4 Cir., 242 F.2d 76, 80, it is well settled "that to resist a motion for summary judgment, the party against whom it is sought must present some evidence to indicate that the facts are in dispute, where the moving party's evidence has shown otherwise * * *. His bare contention that the issue is disputable will not suffice." [8] In the instant case plaintiffs have not been able to present any evidence to indicate that the facts with respect to Count 4 are in dispute, and the moving party's evidence has shown otherwise.

Although the Supreme Court in Poller v. Columbia Broadcasting, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458, has recently stated that summary judgments are to be used sparingly in complex antitrust litigation where motive and intent play leading roles, this would seem to be an appropriate case for even a sparing use of summary procedures. See Savon Gas Stations No. 6, Inc. v. Shell Oil Company, D.Md., 203 F.Supp. 529, aff'd 4 Cir., 309 F.2d 306. See also White Motor Co. v. United States, 372 U.S. 253, 83 S.Ct. 696.

Plaintiffs' motion for further discovery in connection with Count 4 is hereby denied. Defendant's motion for summary judgment in its favor on Count 4 is hereby granted.

8. See also Edward B. Marks Music Corp. v. Continental Record Co., 2 Cir., 222 F. 2d 488, 492; Zampos v. United States Smelting, Refining & Min. Co., 10 Cir.,

206 F.2d 171, 173; Firemen's Mut. Ins. Co. v. Aponaug Mfg. Co., 5 Cir., 149 F. 2d 359, 362.