**Eerik HEINE**
v.
**Juri RAUS.**
**Civ. No. 15952.**

United States District Court
D. Maryland.
Dec. 8, 1966.

---

Ernest C. Raskauskas and Robert J. Stanford, Washington, D. C., for plaintiff.

Paul R. Connolly, E. Barrett Prettyman, Jr., and Hogan & Hartson, Washington, D. C., for defendant.

Lawrence R. Houston, Gen. Counsel, C.I.A., Washington, D. C., and Thomas J. Kenney, U. S. Atty., Baltimore, Md., for the United States.

THOMSEN, Chief Judge.

This is an action for slander in which defendant's motion for summary judgment asserts the defense of absolute privilege on the ground that when he made certain defamatory statements he was acting within the scope and course of his employment by the Central Intelligence Agency on behalf of the United States, and had been instructed by the CIA to warn members of Estonian emi-

gré groups that plaintiff was a dispatched Soviet intelligence operative, a KGB agent.

Defendant's motion for summary judgment raises a number of substantive and procedural questions. The matter is complicated by the fact that the United States has asserted its privilege against disclosing state secrets.

## I.

The complaint, filed in November 1964, alleges that plaintiff, a citizen of Canada, has never been a Communist; that he had been active in various Estonian emigré groups, and had earned part of his livelihood by exhibiting a motion picture, entitled "Creators of Legend", which portrays brutalities committed by the Communists in Occupied Estonia, and by delivering lectures based on his experiences as a prisoner in Russian prison camps and as a guerilla fighter; that on three occasions, in November 1963, July 1964 and September 1964, respectively, defendant defamed plaintiff by stating that "Eerik Heine is a Communist" and "Eerik Heine is a KGB Agent", the statements being understood as referring to plaintiff as a "Communist Secret Agent"; that the statements were untrue, were known to defendant to be untrue, were slanderous and defamatory *per se,* and were made maliciously.

Plaintiff demands general and punitive damages.

In the original answer, filed in January 1965, defendant stated that he was National Commander of the Legion of Estonian Liberation, Inc. and admitted that on the three occasions specified in the complaint he had said, in the presence of others, that he "was in possession of responsible information received by him from an official agency of the United States Government to the effect that the plaintiff was a Soviet agent or collaborator and on that account should not receive the cooperation of the Legion and its branches during the plaintiff's tours of the United States." The answer asserted that the statements were true, and were made "only upon privileged occasions to persons privileged to receive them, and each such statement was made without express or actual malice in furtherance of the defendant's legitimate duties, responsibilities and offices"; that "the maintenance of the present action by the plaintiff is contrary to the interest and public policy of the United States"; and that "the defendant was privileged to speak of the plaintiff as he did, since the defendant was acting as an appropriate officer of the Estonian liberation movement". In the original answer defendant did not raise the defense of absolute privilege, because he was bound by a secrecy agreement [1] not

1. The Secrecy Agreement, so headed, was executed in May 1963, more than five months before the first alleged defamatory statement. It reads as follows:

"1. I recognize that in connection with my confidential relationship with the Central Intelligence Agency (CIA) I will become apprised of information relating to the national defense and security and particularly information of this nature relating to intelligence sources, methods and operations, and specifically operations, sources, methods, personnel, fiscal data, or security measures. I realize that in addition to the actual information that comes into my possession because of my relationship with CIA it will be possible for me to deduce implications from such information. I understand that unlawful disclosure of this information or its implications could seriously jeopardize the national interests and security of the United States of America.

"2. I solemnly swear, without mental reservation or purpose of evasion, and in the absence of duress, as a citizen of the United States of America that I will never divulge, publish or reveal, by writing, word, conduct or other means, any information or its implications of the character set forth above, including the fact or content of my meeting with representatives of CIA, to any person unless I have been specifically authorized, in writing to do so by a representative of CIA. I understand that the term 'any person' includes, among others, friends, relatives, spouses, employers or representatives of any State or Federal Agency, excepting only CIA representatives who have been specifically referred to me by the representatives of that agency

to divulge such information unless specifically authorized to do so by a representative of the CIA, and because his counsel had been instructed by counsel for the CIA not to raise that defense.

In February 1965 defendant took plaintiff's deposition. In November 1965 plaintiff served on defendant 424 interrogatories, which defendant moved to strike on two grounds: (1) that their number was oppressive, and (2) that many of them inquired of privileged matter. See Rules 26(b) and 33, F.R.Civ.P. At the same time defendant filed a motion for summary judgment, based upon an affidavit of Richard Helms, then Deputy Director of Central Intelligence, that when defendant spoke concerning plaintiff on the occasions referred to in the complaint he was in possession of information furnished him by the CIA and was acting within the scope and course of his employment by that agency on behalf of the United States.

At a hearing on the motion and the exceptions then pending, the Court ruled: that defendant's original answer did not set up the defense of absolute privilege, but that leave should be granted him to file an amended answer asserting that defense;[2] that defendant should not be required to answer the 424 interrogatories, but that plaintiff should be allowed discovery, so far as permitted by law, on the issue of absolute privilege claimed by defendant; that a more detailed affidavit should be filed by the Deputy Director of Central Intelligence, or plaintiff should be allowed to proceed with reasonable discovery from him; and that if the Government wished to assert a privilege against disclosing state secrets, the United States Attorney should be present and such privilege should be formally asserted.

Thereafter a much more detailed affidavit by Helms, dated April 1, 1966, was filed. After stating his authority and familiarity with the facts the Deputy Director stated:

"4. During the periods of time specified in paragraphs 5, 6, and 7 of the complaint, the defendant, Juri Raus, was employed as a highway research engineer for the Office of Research and Development, Bureau of Public Roads, United States Department of Commerce.

"5. During the same periods of time, the defendant was the National Commander of the Legion of Estonian Liberation, Inc., and was familiar with Estonian emigre activities.

"6. For a number of reasons, including his past history and his position as National Commander of the

---

whom I have met on the occasion of signing this secrecy agreement.

"3. I understand that this agreement does not impose any restriction upon me or my employer with regard to information acquired by me or my employer in the regular conduct of business and not as a result of my relationship with CIA. The mere fact that such information is of interest to CIA does not subject it to the confidential treatment prescribed by this secrecy agreement.

"4. I fully realize that intentional or negligent violation of this secrecy agreement may subject me to prosecution under the Espionage Laws of the United States of America (18 USC sec. 793 and 794)."

2. Plaintiff contends that defendant waived or is estopped to assert the defense in this case because he did not raise it in his original answer, and took the deposition of plaintiff on the merits. Plaintiff therefore moved the Court to strike defendant's motion to amend his answer and assert the defense. Plaintiff's motion was overruled, and the Court adheres to its ruling, because it is quite clear from the testimony of defendant's counsel that defendant was refused permission by the CIA to raise the defense in his original answers, and that he was bound by his secrecy agreement, set out in note 1, above. The Agency's reluctance to identify an employee's covert activity is understandable; moreover, the delay of the CIA in granting permission to assert the defense should not be charged to defendant. Under the circumstances shown by the record there was no undue delay, bad faith or dilatory action chargeable to defendant, and no such prejudice to plaintiff as would prevent the allowance of the amendment. See Rule 15, F. R.Civ.P.

Legion of Estonian Liberation, the defendant has been a source to this Agency of foreign intelligence information pertaining inter alia to Soviet Estonia and to Estonian emigré activities in foreign countries as well as in the United States.

"7. The Central Intelligence Agency has employed the defendant from time to time—concurrently with his duties on behalf of the Bureau of Public Roads—to carry out specific assignments on behalf of the Agency. Defendant was so employed on those occasions specified in paragraphs 5, 6 and 7 of the complaint.

"8. On those occasions specified in paragraphs 5, 6, and 7 of the complaint, the defendant was furnished information concerning the plaintiff by the Central Intelligence Agency and was instructed to disseminate such information to members of the Legion so as to protect the integrity of the Agency's foreign intelligence sources. Accordingly, when Juri Raus spoke concerning the plaintiff on the occasions about which complaint is made, he was acting within the scope and course of his employment by the Agency on behalf of the United States.

"9. On May 29, 1963, prior to the occasions specified in paragraphs 5, 6 and 7 of the complaint, the defendant signed a Secrecy Agreement with the Agency, a copy of which is attached, which Agreement is still in full force and effect.

"10. After a personal review of the Agency's activities pertaining to Eerik Heine, I have reached the judgment on behalf of the Agency that it would be contrary to the security interests of the United States for any further information pertaining to the use and employment of Juri Raus by the Agency in connection with Eerik Heine to be disclosed, other than the disclosures already made in the defendant's answer, in my own affidavits, and the defendant's affidavits, which I have read.

"11. Acting pursuant to the authority lodged in the Director of Central Intelligence by virtue of the provisions of Title 50, United States Code, Sections 403(d) and 403g, and the implementing Regulations promulgated thereunder, I have determined that it would be contrary to the national interest and would further compromise the proper protection of intelligence sources and methods to disclose further information in regard to those material matters which the plaintiff has sought to have revealed through his pleadings. I am herewith directing Juri Raus to make no further disclosures concerning his employment by the Agency or relating to this matter without specific authorization by proper officials of the Central Intelligence Agency."

Counsel for plaintiff still objected that the affidavit was not sufficiently specific and two clarifying affidavits by Helms were thereafter filed. The second such affidavit stated:

"1. In Paragraph 2 of my Affidavit dated April 22, 1966, which I executed as Deputy Director of Central Intelligence, I stated in part: 'The defendant was instructed to warn members of Estonian emigre groups that Eerik Heine was a dispatched Soviet intelligence operative, a KGB agent.'

"2. The context of that statement means, I intended by that statement to convey, and I now so state: The defendant, Juri Raus, was instructed by the Central Intelligence Agency to warn members of Estonian emigre groups that Eerik Heine was a dispatched Soviet intelligence operative, a KGB agent."

At a hearing on April 14, the Court had suggested that plaintiff might take the deposition of defendant or someone from the CIA or both, at a hearing with the Judge present, so that the Government's privilege might be claimed on a question by question basis, and immediate rulings obtained.

Such a hearing was held on April 28. At the beginning of that hearing a formal claim of privilege on behalf of the United States, made by Admiral W. F.

Raborn, Director of Central Intelligence, was presented to the Court by Lawrence R. Houston, General Counsel of the CIA, and by Thomas J. Kenney, United States Attorney. The deposition of defendant was taken before the Court; many of the objections asserted by counsel for the Government or by counsel for defendant on instructions from the General Counsel of the CIA were sustained by the Court in view of the rules stated in United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), but defendant's multiple employment by the Government was clarified.

Argument on defendant's motion for summary judgment was heard on May 13, and again on September 28, after the record had been supplemented by several letters and documents and final briefs had been filed by both sides.

## II.

■ Defendant relies upon the defense of absolute privilege—that he had been instructed by the CIA to warn members of Estonian emigré groups that Eerik Heine was a dispatched Soviet intelligence operative, a KGB agent, and that when he made the statements alleged to be defamatory he was acting within the scope of his employment by an agency of the United States. Such an absolute privilege was recognized and sustained by the Supreme Court in Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), and in Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959), following Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896), and Yaselli v. Goff, 2 Cir., 12 F.2d 396, 56 A.L.R. 1239 (1926), aff'd per curiam 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927).[3] It was recognized in Garrison v. State of Louisiana, 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), in a dictum by a justice who had dissented in Barr v. Matteo and Howard v. Lyons. The privilege

has been repeatedly and recently recognized and sustained by the Courts of Appeals of many circuits. See e. g.: Preble v. Johnson, 10 Cir., 275 F.2d 275 (1960); Sauber v. Gliedman, 7 Cir., 283 F.2d 941 (1960), cert. den. 366 U.S. 906, 81 S.Ct. 1047, 6 L.Ed.2d 204 (1961); Ove Gustavsson Contracting Co. v. Floete, 2 Cir., 299 F.2d 655 (1962), cert. den. 374 U.S. 827, 83 S.Ct. 1862, 10 L.Ed.2d 1050 (1963); Poss v. Lieberman, 2 Cir., 299 F.2d 358, cert. den. 370 U.S. 944, 82 S.Ct. 1585, 8 L.Ed.2d 810 (1962); Brownfield v. Landon, 113 U.S.App.D.C. 248, 307 F.2d 389, cert. den. 371 U.S. 924, 83 S.Ct. 291, 9 L.Ed.2d 232 (1962); Wozencraft v. Captiva, 5 Cir., 314 F.2d 288 (1963); Denman v. White, 1 Cir., 316 F.2d 524 (1963); Waymire v. Deneve, 5 Cir., 333 F.2d 149 (1964); Chafin v. Pratt, 5 Cir., 358 F.2d 349 (1966). See also DeLevay v. Richmond County School Board, 4 Cir., 284 F.2d 340 (1960); Holmes v. Eddy, 4 Cir., 341 F.2d 477 (1965).

The reasons for the privilege were stated by Mr. Justice Harlan in Barr v. Matteo, 360 U.S. at 571, 572, 79 S.Ct. at 1339, 3 L.Ed.2d 1434, as follows:

"* * * It has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government. The matter has been admirably expressed by Judge Learned Hand:

"'It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it

---

3. The validity of the "claim of absolute privilege must be judged by federal standards, to be formulated by the courts in the absence of legislative action by

Congress." Howard v. Lyons, 360 U.S. 593, 597, 79 S.Ct. 1331, 1334, 3 L.Ed. 2d 1454 (1959).

were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. * * *

" 'The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him. * * * ' Gregoire v. Biddle, 177 F.2d 579, 581."

While recognizing the rule, as stated and applied in Barr v. Matteo, supra, counsel for plaintiff contend that defendant cannot assert the privilege for a number of reasons.

First, plaintiff contends the privilege does not apply to employees who exercise no discretion, as distinguished from officers or officials of the Government. This argument is not supported by reason or authority. In Waymire v. Deneve, 5 Cir., 333 F.2d 149 (1964), the privilege was accorded to an agent of the Customs Bureau of the United States Treasury Department, and Wigmore on Evidence (McNaughton Revision 1961), Vol. 8, § 2368, states: "A subordinate or ministerial official—i. e., one who acts under the orders of a superior official—is absolutely exempt from liability if the harm done by him is done solely in implicit obedience to an order lawful upon its face.

In Barr v. Matteo the question was whether the privilege should be accorded to an official who exercised some discretion, but was below cabinet rank. Mr. Justice Harlan said:

"We do not think that the principle announced in *Vilas* [161 U.S. 483, [16 S.Ct. 631, 40 L.Ed. 780]] can properly be restricted to executive officers of cabinet rank, and in fact it never has been so restricted by the lower federal courts. The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government. The complexities and magnitude of governmental activity have become so great that there must of necessity be a delegation and redelegation of authority as to many functions, and we cannot say that these functions become less important simply because they are exercised by officers of lower rank in the executive hierarchy." 360 U.S. 572, 573, 79 S.Ct. 1340.

Later he said:

" * * * That petitioner was not *required* by law or by direction of his superiors to speak out cannot be controlling in the case of an official of policy-making rank, for the same considerations which underlie the recognition of the privilege as to acts done in connection with a mandatory duty apply with equal force to discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority." 360 U.S. 575, 79 S.Ct. 1341. These principles apply with even greater force to an employee who is acting under orders and has a duty to carry them out.

The test for determining the scope of the privilege, as stated in Barr v. Matteo, 360 U.S. at 575, 79 S.Ct. 1335, 3 L.Ed.2d 1434, is whether the action taken was within the outer perimeter of the defendant's line of duty.

█ Plaintiff contends that the test is not met in this case; that the statements made by defendant "were actions beyond the statutory power of the CIA", because 50 U.S.C.A. § 403(d) (3) provides "[t]hat the Agency shall have no * * * internal-security functions". He argues that departments and agencies other than the CIA, such as the Subversive Activities Control Board and the Federal Bureau of Investigation, must deal with security matters arising within the borders of the United States. It is clear, however, that one of the functions entrusted to the Central Intelligence Agency and its Director is "protecting intelligence sources and methods from unauthorized disclosure". 50 U.S.C.A. § 403(d) (3). In his affidavit of April 1, 1966, quoted at length above, Helms stated that Raus was furnished information concerning the plaintiff by the CIA "and was instructed to disseminate such information to members of the Legion so as to protect the integrity of the Agency's foreign intelligence sources". In his final affidavit, also quoted above, Helms stated that defendant "was instructed by the Central Intelligence Agency to warn members of Estonian emigre groups that Eerik Heine was a dispatched Soviet intelligence operative, a KGB agent".

It is reasonable that emigre groups from nations behind the Iron Curtain would be a valuable source of intelligence information as to what goes on in their old homeland. The fact that the immediate intelligence source is located in the United States does not make it an "internal-security function", over which the CIA has no authority. The Court concludes that activities by the CIA to protect its foreign intelligence sources located in the United States are within the power granted by Congress to the CIA.[4]

### III.

Plaintiff next argues that the motion for summary judgment should be denied

---

4. At the hearing on May 13 the Court requested the General Counsel of the CIA to submit a statement as to the legal authority of the CIA to engage in activities within the United States with respect to foreign intelligence sources. In response to that request, the General Counsel prepared an affidavit which incorporates by reference particular paragraphs of a document which is classified "secret" and which cannot be declassified for the purposes of this case. For that reason, the General Counsel requested the Department of Justice to submit to the Court under seal, for in camera inspection, the identification of the document and the two pertinent paragraphs, properly certified. The Agency stated that it did not object to the Court making the classified excerpts available to the attorneys for plaintiff and defendant respectively for inspection but not for copying, and stated that any of the attorneys would be granted access, upon request, to the two pertinent excerpts at the office of the General Counsel, with the understanding that the attorneys would not disclose the excerpts thus made available to them. The attorneys for plaintiff refused to examine the excerpts under those conditions, stating that they would not look at anything they could not communicate to their client. The Court has examined the papers in camera; they are not inconsistent with the affidavits of Helms, but the Court has not considered the classified excerpts in reaching its decision herein.

on the ground that there is a genuine issue as to a material fact, namely, whether defendant was employed by the CIA and, if so, whether the statements which he made were in accordance with his instructions or went beyond his instructions. Since the amendment to Rule 56 (e), F.R.Civ.P., effective July 1, 1963, it is now beyond dispute that "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." That was always the rule in the Fourth Circuit. Bond Distributing Co. v. Carling Brewing Company, D.Md., 32 F.R.D. 409, aff'd 4 Cir., 325 F.2d 158 (1963). Upon examination, the claimed conflicts in the affidavits and depositions do not materially affect the facts upon which the defense of absolute privilege is based. The most important conflict claimed by plaintiff is whether defendant was employed by the Bureau of Public Roads or by the CIA. However, it appears quite plainly from paragraphs 4, 6, 7 and 8 of the second affidavit of Helms, quoted above, and from the deposition of defendant, that he was employed both by the Bureau of Public Roads and by the CIA, for different purposes, and that he was acting in the course of his employment by the CIA when he made the statements in question. Plaintiff does not dispute that defendant was employed by the United States.[5]

There is more force in plaintiff's argument that he has been prevented from discovering possibly conflicting evidence by the Government's assertion of its privilege not to disclose the operations of the CIA. The Court has been anxious that plaintiff should have the opportunity to discover whatever facts he is legally entitled to discover under the rules stated in United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), and has accorded plaintiff that opportunity, through the deposition of defendant taken in open court, and by requiring such clarification and amplification of the original affidavits made by Helms as the Agency determined were consistent with the security interests committed to its care.

Deputy Director Helms, in his affidavit of April 1, 1966, stated "that it would be contrary to the security interests of the United States for any further information pertaining to the use and employment of Juri Raus by the Agency in connection with Eerik Heine to be disclosed, other than the disclosures already made in the defendant's answer, in my own affidavits, and the defendant's affidavits * * *."

It is clear, therefore, that if Raus makes further disclosures without the approval of the Agency, he would not only violate the secrecy agreement, see note 1, above, but might also violate the statute prohibiting unlawful disclosure of confidential information respecting the national defense. See 18 U.S.C.A. §§ 793, 794, 798 and 1905.

The privilege of the Government which was recognized and sustained in *Reynolds* is reenforced in this case by the provisions of the applicable statutes. 50 U.S.C.A. § 403(d) (3) provides, in pertinent part:

"[T]he Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure".

---

5. Plaintiff contends that some of the statements in Helms' affidavits are conclusions rather than facts. No doubt some of the statements are conclusions, but the facts contained in the affidavits support the conclusions, which are further supported by the deposition of the defendant taken in open court and the exhibits which have been filed. The conclusions are not contradicted by any evidence or other material before the Court except the bare allegations of plaintiff's complaint, which are not sufficient to overcome the facts contained in the affidavits and other evidence. Rule 56(e).

In conjunction with this provision, 50 U.S.C.A. § 403g provides:

"In the interests of the security of the foreign intelligence activities of the United States and in order further to implement the proviso of section 403(d) (3) of this title that the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure, the Agency shall be exempted from the provisions of section 654 of Title 5, and the provisions of any other law which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency * * *"

See also Executive Order No. 10501, 18 F.R. 7049 (1953), as amended by Executive Order No. 10816, 24 F.R. 3777 (1959), set out after 50 U.S.C. § 401 (Cum.Supp.1965).

Plaintiff argues that the affidavits and testimony in support of the motion for summary judgment do not present admissible evidence because they were not subject to cross-examination and were not based on personal knowledge. The deposition of defendant, taken by counsel for plaintiff in open court, was itself cross-examination, and was permitted to the full extent authorized by United States v. Reynolds. Such testimony as he was allowed to give was based on his personal knowledge.

The affidavits with respect to the instructions given defendant were made by Helms, then Deputy Director of Central Intelligence, rather than by the person who gave defendant the instructions. The decision not to disclose the name of that person was made by the appropriate official of the CIA, in the exercise of the authority granted him by the applicable statutes and executive orders. That such disclosure might be damaging to the intelligence sources and methods of the Agency was asserted by Helms in paragraphs 10 and 11 of his affidavit, and by Admiral Raborn, then Director of Central Intelligence, in the Claim of Privilege which he filed on behalf of the United States.

It cannot be denied that the combination of (1) the privilege against liability for defamation asserted by defendant and (2) the privilege against discovery of the secrets of the CIA asserted by the Government, places plaintiff in a very difficult position. But the fact that the two privileges operate in concert in the instant case does not affect their validity.

■ The provisions of Rule 56(e), F.R.Civ.P., requiring affidavits to be made on personal knowledge and to set forth facts which would be admissible in evidence, must be read in connection with the applicable statutes and executive order, particularly 50 U.S.C.A. §§ 403(d) (3) and 403g quoted and discussed above in this section of the opinion. To require that the affidavit be signed by the person who personally instructed Raus would force the CIA to reveal the names of one or more of its personnel in contravention of section 403g, quoted above.

■ A trial would not resolve the question of the truth or falsity of the charges, because the Court would still be required to recognize the privilege asserted by the United States. There is no reason to believe that the Agency's position will be altered by any further attempts at discovery by plaintiff. The dilemma which would be presented at the trial would be the same dilemma which is presented now—whether the fact that defendant is precluded from testifying to facts and from calling witnesses who might establish the truth of the alleged defamatory remarks (a) should require defendant to stand weaponless before his adversary, or (b) should deny plaintiff the opportunity to attempt to vindicate himself in court.[6] No way to avoid

---

6. Plaintiff has embraced the opportunity to bring his case to the attention of the public by elaborate statements to the press in this country and in Canada. The propriety of the way the CIA operates has been canvassed in a series of articles in the New York Times and other leading newspapers, and has been investigated by the Congress during the past months.

choosing between two evils has been suggested or discovered. The choice is dictated by the passage from Judge Learned Hand's opinion in Gregoire v. Biddle, 2 Cir., 177 F.2d 579, 581, which is set out in full in section II of this opinion. The principles so clearly stated by Judge Hand and applied by the Supreme Court in Barr v. Matteo and Howard v. Lyons require that summary judgment be entered for defendant herein.