**Eerik HEINE**

v.

**Juri RAUS.**

**Civ. No. 15952.**

United States District Court
D. Maryland.

Nov. 3, 1969.

Ernest C. Raskauskas and Robert J. Stanford, Washington, D. C., for plaintiff.

Paul R. Connolly, Williams & Connolly, and E. Barrett Prettyman, Jr., and Hogan & Hartson, Washington, D. C., for defendant.

Lawrence R. Houston, Gen. Counsel, C.I.A., Kevin T. Maroney, Atty., Dept. of Justice, Washington, D. C., Stephen H. Sachs, U. S. Atty., and Barnet D. Skolnik, Asst. U. S. Atty., Baltimore, Md., for the United States.

THOMSEN, Chief Judge.

In this action for slander, defendant asserted the defense of absolute privilege on the ground that when he made certain defamatory statements he was acting within the scope and course of his employment by the Central Intelligence Agency on behalf of the United States, and had been instructed by the CIA to warn members of Estonian emigre groups that plaintiff was a dispatched Soviet intelligence operative, a KGB agent.

After various proceedings, detailed in the previous opinion of this Court, 261 F.Supp. 570 (1966), and for the reasons set out therein this Court granted defendant's motion for summary judgment.

On appeal, the Fourth Circuit vacated the judgment and remanded the case for the narrow purpose set out in its opinion, 399 F.2d 785 (1968).

After summarizing the proceedings in this Court, the Fourth Circuit said: "It [the District Court] was of the opinion that the absolute governmental privilege was available to a government employee such as Raus, who faithfully executed his instructions, as to one of higher authority exercising discretionary functions within the outer perimeter of his authority. We agree, provided the instructions were issued by one having authority to issue them." 399 F.2d at 788.

The Fourth Circuit quoted the discussion of the government's privilege of silence with respect to "state secrets", contained in United States v. Reynolds, 345 U.S. 1, 7–8, 73 S.Ct. 528, 97 L.Ed. 727 (1953), and said: "We affirm the right of the CIA in this case to invoke the governmental privilege against disclosure of state secrets and its allowance, to the extent it was allowed, by the District Court." 399 F.2d at 788.

The Fourth Circuit continued: "On the question of executive privilege in defamation suits, we also agree generally with the District Court, its analysis of Barr v. Matteo [360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434] and its reasoning, though we come to the conclusion that one more detail should have been supplied before entry of summary judgment."

After a full discussion of the reasons which led to its conclusion, the Fourth Circuit said:

"We conclude that the absolute privilege is available to Raus if his instructions were issued with the approval of the Director or of a subordinate authorized by the Director, in the subordinate's discretion, to issue such instructions, or if the giving of the instructions was subsequently ratified and approved by such an official.

"Though the Director's affidavits state that Raus acted under instructions of the CIA, which certainly strongly implies that the instructions were given by, or with the approval of, a responsible, authorized official of the Agency and though the Director's appearance in the case carries with it a strong implication of his personal ratification and approval, it is said that on the present record there is still a permissible inference that the instructions were given by an unauthorized underling and that his action has never had the approval of a responsible official of the Agency having authority to issue or approve such instructions. The inference seems unlikely, but we cannot say it is foreclosed by the present record.

"Since summary judgment was issued, we will vacate the judgment so that, if the plaintiff represents to the District Court serious reliance upon the inference, further inquiry may be had and additional findings made. The inquiry should be directed to the identity of the official within the Agency who authorized or approved the instructions to Raus. Disclosure of the identity of the individual who dealt with Raus is not required; the answer to be sought is whether or not the Director or a Deputy Director or a subordinate official, having authority to do so, authorized, approved or ratified the instructions. If such disclosures are reasonably thought by the District Judge to violate the claimed privilege for state secrets, they may be made *in camera*, to that extent. Disclosures *in camera* are inconsistent with the normal rights of a plaintiff of inquiry and cross-examination, of course, but if the two interests cannot be reconciled, the interest of the individual litigant must give way to the government's privilege against disclosure of its secrets of state.

"Finally, we may observe that while we generally approve entry of summary judgment for the defendant, subject only to the limited additional inquiry we direct, the plaintiff would fare no better if the defendant's privilege were held to be not absolute, but only qualified. Heine cannot controvert the claim of Raus, supported by the CIA, that he acted under instructions of that Agency. Heine claims no publication exceeding the instructions. He has no basis for a showing of malice. If summary judgment is appropriate after the additional, limited inquiry we direct, it will avoid the necessity of a trial and possible compromise of state secrets which the government is entitled to preserve." 399 F.2d at 791.

Following the remand of the case to this Court, plaintiff stated formally that he "seriously relies upon the inference that the actions and statements of Juri Raus, the defendant, against the plaintiff, were not with the approval of a responsible official of the Agency having authority to issue or approve such instructions". He requested the Court to "permit plaintiff to make further inquiry into said inference, and that additional findings be made".

The Court then held a preliminary conference, at which (1) plaintiff requested that he be permitted to take the deposition of Richard Helms, the Director of the Central Intelligence Agency, in order to establish the factual basis for the inference, and (2) defendant filed an affidavit of the Director, dated February 10, 1969, together with a motion for summary judgment. The Court reviewed the Helms affidavit and suggested that it might be amplified in order to clarify certain statements therein. The defendant and the government agreed to obtain another affidavit from the Director to clarify the questions raised by the Court.

At the same hearing the Court directed plaintiff to submit written questions, so that more careful consideration could be given to them both by the Director and by the Court.

On March 19, 1969, plaintiff submitted thirty-five questions on which he wished to take the deposition of the Director. Shortly thereafter defendant filed objections to the proposed questions and an additional affidavit of the Director, dated April 3, 1969, supplementing his affidavit of February 10, 1969. The United States filed a statement on behalf of the Director and the Central Intelligence Agency, advising the Court that it would await the ruling of the Court as to whether any of the proposed questions would be allowed before determining whether or not it would be necessary for the Director to make an official claim of privilege on the ground of secrecy with respect to any of the information sought to be elicited.

On June 6, 1969, a formal hearing was held on defendant's objections to the questions. After argument, and subject to a further report from the United States as to whether the Director would file a claim of privilege against disclosure of state secrets with respect to any of the proposed questions, and reserving ruling on any such claim of privilege, the Court ruled: (1) that certain questions [1] were within the scope of inquiry directed by the Court of Appeals; (2) that two questions [2] would be reexamined in the light of any response which the Director might make in response to question No. 4; and (3) that defendant's objections to other questions [3] should be sustained.

On July 16, 1969, the Court received a letter from J. Walter Yeagley, Esq., Assistant Attorney General of the United States, advising the Court that the Unit-

1. Nos. (3), (4), (5), (9), (12), (15), (16), (17), (18), (19), (20), (21), (22) and (29).

2. Nos. (13) and (14).

3. Nos. (1), (2), (6), (7), (8), (10), (11), (23), (24), (25), (26), (27), (28), (30), (31), (32), (33), (34) and (35).

ed States opposed the suggestion that a deposition upon oral examination be taken of the Director, and that subject to the claim of privilege the Director would respond in writing to the questions which the Court had ruled to be relevant, material and proper under the circumstances. On September 29, 1969, the Director responded in writing and under oath to all of the questions allowed by the Court. The Director made partial answers to questions (3), (5) and (12), and with respect to each of them stated that as Director of Central Intelligence, he determined that "it would be contrary to the interests of the security of the foreign intelligence activities of the United States to give further information" on the matters covered by the questions, and formally asserted the privileged status of such information. See footnote [4] for those questions and an-

4. "Question 3. You state categorically and conclusively that the counterintelligence officer referred to in paragraph 4 of your fifth Affidavit had a certain assigned function and was acting in accordance with his prescribed duties. What was the 'assigned function' and what were the 'prescribed duties' of the said counterintelligence officer with reference to the statements made by Juri Raus against Eerik Heine?

"*Answer.* As stated in my Affidavit of February 10, 1969, the counterintelligence officer's function and duties, with reference to the statements made by Juri Raus concerning Eerik Heine, were to safeguard the Agency's intelligence sources developed within Estonian emigre groups.

"As Director of Central Intelligence, I determine that it would be contrary to the interests of the security of the foreign intelligence activities of the United States to give further information as to the assigned counterintelligence functions or the prescribed duties of the counterintelligence officer referred to in paragraph 4 of my Affidavit of February 10, 1969, and, accordingly, pursuant to the authority vested in me as Director of Central Intelligence, I formally assert the privileged status of such information and respectfully decline to give further information in answer to question 3."

"Question 5. In paragraph 5 of your fifth Affidavit, you allege that the entire matter was reviewed by you in December of 1964, and then as Deputy Director with responsibility for all Agency counterintelligence operations, you ratified and approved the action taken by the counterintelligence officer who instructed Juri Raus to warn members of the Estonian emigre groups that Eerik Heine was a Soviet Intelligence Operative, a KGB agent. What prior authorization, instruction and legal statutory authority did the mentioned counterintelligence officer have for taking his stated action prior to your subsequent ratification?

"*Answer.* In paragraph 4 of my Affidavit of February 10, 1969, I stated that the counterintelligence officer responsible for safeguarding sources of intelligence developed within Estonian emigre groups, acting in accordance with his prescribed duties, instructed Juri Raus to warn members of Estonian emigre groups that Eerik Heine was a Soviet intelligence operative, a KGB agent.

"As Director of Central Intelligence, I determine that it would be contrary to the interests of the security of the foreign intelligence activities of the United States to give further information concerning the prior authorization or instruction to the counterintelligence officer referred to in paragraph 5 of my Affidavit of February 10, 1969, other than that provided in my answer to question 3, and, accordingly, pursuant to the authority vested in me as Director of Central Intelligence, I formally assert the privileged status of such information and respectfully decline to give further information in answer to question 5."

"Question 12. What was the grade and salary of the counterintelligence officer referred to in paragraph 4 of your fifth Affidavit at the time he instructed Juri Raus to warn members of the Estonian emigre groups that Eerik Heine was a Soviet intelligence operative, a KGB agent?

"*Answer.* As stated in my answer to question 9, the counterintelligence officer in question was, at all times complained of, a full-time staff employee of the Agency. He was paid annual compensation at a rate in accordance with the Classification Act Amendments of 1962.

"As Director of Central Intelligence, I determine that it would be contrary to the interests of the security of the foreign intelligence activities of the United States to give any information regarding the grade and salary of the counterintelligence officer in question, and, accordingly, pursuant to the authority vested in me as Director of Central Intelligence,

swers. All other questions were answered without any claim of privilege.

On October 17, 1969, another formal hearing was held, at which plaintiff pressed his request to take the oral deposition of the Director, and defendant argued that the answers to the written interrogatories gave all the information which could be obtained by an oral deposition, because the three claims of privilege would have to be sustained on oral depositions.

The Court repeatedly asked counsel for plaintiff what information they wished to obtain in addition to that included in the Director's affidavits, particularly the affidavits of February 10, 1969 and April 2, 1969, and in his answers to those interrogatories which the Court required him to answer. Aside from the matters on which the Director claimed privilege, counsel for plaintiffs did not suggest any other questions, but elected to stand on the record. This Court, therefore, must determine (1) whether the claims of privilege asserted by the Director with respect to three questions were properly asserted, and (2) whether the facts stated in the affidavits and answers to interrogatories meet the requirements specified by the Fourth Circuit for the entry of a summary judgment. See 399 F.2d at 791, quoted above.

The Director's affidavit of February 10, 1969, read in pertinent part as follows (the matter in italics in paragraph 4 was added by the affidavit of April 2, 1969):

"3. On those occasions specified in paragraphs 5, 6 and 7 of the complaint filed in this action, as a Deputy Director of the Agency, I was charged by the Director of Central Intelligence, with the specific responsibility, among others, for the conduct of the Agency's counterintelligence operations, the purpose of which is to protect intelligence activities, sources and methods against the operations of foreign intelligence services.

I formally assert the privileged status of such information and respectfully decline

"4. Prior to November 9, 1963, this Agency through confidential intelligence sources available to it received certain information concerning Eerik Heine which was analyzed and evaluated by counterintelligence officers responsible to me, who reached the conclusion that Eerik Heine was a dispatched Soviet intelligence operative, a KGB agent. In the performance of his assigned counterintelligence function, the counterintelligence officer responsible for safeguarding sources of intelligence developed within Estonian emigre groups, acting in accordance with his prescribed duties, instructed Juri Raus to warn members of the Estonian emigre groups that Eerik Heine was a Soviet intelligence operative, a KGB agent. *The counterintelligence officer referred in the second sentence of the said paragraph 4 was one of the counterintelligence officers referred to in the first sentence of that paragraph.*

"5. After initiation of the present suit, the entire matter was reviewed by me personally as a Deputy Director of the Agency. In December 1964, acting in my capacity as the said Deputy Director with responsibility for all Agency counterintelligence operations, I ratified and approved the action taken by the counterintelligence officer who instructed Juri Raus to warn members of the Estonian emigre groups that Eerik Heine was a Soviet intelligence operative, a KGB agent. In so ratifying and approving, I acted pursuant to the authority vested in me by the then Director of Central Intelligence. In my present capacity as Director of Central Intelligence, I now affirm that appropriate authority was vested in the said Deputy Director by the then Director of Central Intelligence to authorize, approve, or ratify the instructions given to Juri Raus. The several affidavits which I have provided the Court in this matter, in

to give further information in answer to question 12."

my capacity as the Deputy Director of Central Intelligence, were intended as ratification and approval of said instructions.

"6. Aside from identifying my participation in the Agency decisions concerning Eerik Heine, as set forth herein, I have determined, pursuant to my statutory responsibilities as Director of Central Intelligence, that it would be contrary to the best interests of the United States to disclose the *identity* of the counterintelligence officer who instructed Juri Raus as described in paragraph 4 hereof, since such disclosure could either destroy his utility to the Agency or pose a serious hazard to his safety."

The answers to interrogatories which the Court required the Director to answer gave in greater detail the information contained in the affidavits. The three questions with respect to which the Director claimed privilege and his answers to those questions are set out in footnote 4 above.

1. Those claims of privilege must be sustained under the rule announced in United States v. Reynolds, 345 U.S. 1, 7–8, 73 S.Ct. 528, 97 L.Ed. 727, quoted and followed by the Fourth Circuit in section I of its opinion in this case, 399 F.2d at 788.

2. The Director's affidavit, quoted above, supported by his answers to interrogatories, shows:

(a) that the instructions to Raus were given by a subordinate official of the Agency, authorized to do so, and acting in the course of his prescribed duties and not by an unauthorized underling; and

(b) that Helms, as Deputy Director of the Agency in December, 1964, was authorized to and did ratify and approve the action taken by the counterintelligence officer who instructed Juri Raus to warn members of the Estonian emigre groups that Eerik Heine was a Soviet intelligence operative, a KGB agent.

It is unnecessary to consider whether the reiterated approval of the instruc-

tions by Helms as the present Director would be sufficient.

Having made the additional, limited inquiry directed by the Fourth Circuit, this Court concludes that summary judgment should be entered for the defendant.